UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| LIGE K., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:23-CV-223-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| MARTIN O'MALLEY, *Commissioner of* | ) | **MEMORANDUM OPINION** |
| *Social Security*, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on Claimant Lige K.'s Motion for Summary Judgment. [R. 11]. The Commissioner responded, noting that "[t]he administrative law judge (ALJ) reasonably evaluated Plaintiff's impairments and properly determined his residual functional capacity (RFC)." [R. 13]. No reply was filed. For the reasons that follow, the Court will affirm the final decision of the Commissioner.

I.    **BACKGROUND**

On February 19, 2021, Claimant Lige K. protectively filed an application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3) (the "Act"), [R. 8 (Administrative Record) (hereinafter "Administrative Transcript" or "Tr."), p. 18].[1] He alleges disability beginning on January 16, 2017, due to

> bad nerves, depression, headaches, bursitis on right elbow, severe carpal tunnel in both hands with numbness, severe back pain, numbness in left leg and foot, occasional gout in feet, high blood pressure, low vitamin D, diabetic, sleep apnea, pain stimulator installed in back, and side effects of drowsiness from medications.

---

[1] The Court uses the numbering system from the Court Transcript Index found in the Administrative Record.

1

*Id.* Claimant had filed another application for disability benefits on December 19, 2017. *Id.* The ALJ "issued an unfavorable decision dated August 21, 2019," and the Appeals Council affirmed.[2] *Id.* at 18, 90–108.

In the current challenge to the ALJ's decision, Claimant's application was denied initially and upon reconsideration. *Id.* at 109–124. At Claimant's request, a hearing was held December 14, 2022 before ALJ Joyce Francis ("ALJ Francis"). *Id.* at 45–74. With Claimant's consent, the hearing was held by telephone due to the Coronavirus pandemic. *Id.* ALJ Francis issued an unfavorable decision on February 24, 2023. *Id.* at 15–44.

In making her determination, ALJ Francis applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim. 20 C.F.R. § 404.1520; *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). In summary, the evaluation process proceeds as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

---

[2] In the present case, the ALJ found that Claimant alleged disability beginning on January 16, 2017 but determined that "the current period of analysis begins August 22, 2019, the day after the [same ALJ issued the] prior decision." [Tr. 19]. This is because Claimant had received an unfavorable decision from this ALJ for his first application for disability benefits on August 21, 2019. *Id.* at 18. ALJ Francis explained that "the doctrine of res judicata forecloses further consideration of the prior period of analysis" because evaluating evidence from before that date would "comprise[ ] at least an implied request to reopen" the previous decision when there was no "new evidence nor alternate basis" to do so. *Id.* at 18–19. Therefore, it appears that ALJ Francis only considered evidence from August 22, 2019 or after in her analysis, as the Court will do as well.

4. Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Jordan*, 548 F.3d at 423; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

First, ALJ Francis found Claimant did not engage in substantial gainful activity at any point since July 16, 2017, Claimant's alleged onset date, through December 31, 2022, the date he was last insured. [Tr. 22]. Second, she found Claimant has the severe impairments of "morbid obesity in conjunction with bilateral carpal tunnel syndrome (CTS); bilateral lung density; lumbar degenerative disc disease with disc herniation; right cubital tunnel syndrome; hearing loss; lumbar spondylosis; sacroiliitis; asthma; neuropathy; left shoulder hypertrophy of the acromioclavicular joint (AC); and status post spinal cord stimulator placement." *Id*. Third, ALJ Francis found that none of Claimant's impairments or combination of impairments meet or medically equal the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *Id.* at 26. ALJ Francis then determined Claimant has the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) "that accommodates his need to alternate between sitting and standing or walking every 30 minutes," with the following limitations:

3

He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally stoop. He can frequently kneel, crouch, crawl, and balance as defined in the <u>Selected Characteristics of Occupations of the Dictionary of Occupational Titles</u>. He can frequently handle, finger, and feel bilaterally. He can frequently reach overhead bilaterally. He can tolerate occasional exposure to vibration. He can tolerate frequent concentrated exposure to atmospheric conditions as defined in the <u>Selected Characteristics of Occupations of the Dictionary of Occupational Titles</u>. And the claimant can tolerate exposure to no more than moderate noise as defined by level 3 in the <u>Selected Characteristics of Occupations</u>.

*Id.* at 29. Fourth, ALJ Francis found Claimant has been "unable to perform any past relevant work" since the date he was last insured. *Id.* at 35. Fifth and finally, considering Claimant's age, education, work experience, and RFC, ALJ Francis determined "there were jobs that existed in significant numbers in the national economy that Claimant could have performed" through the date he was last insured. *Id.* at 36.

Based on this evaluation, ALJ Francis concluded that Claimant was not disabled, as defined in the Social Security Act, at any point since his alleged onset date through the date he was last insured. *Id.* at 37. Claimant sought administrative review of the decision, and the Appeals Council declined review on August 7, 2023. *Id.* at 1–7. At that point, ALJ Francis's decision became the final decision of the Commissioner, and Claimant sought judicial review from this Court on December 18, 2023. [R. 1].

## II.    LEGAL STANDARD

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in

the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## III.    ANALYSIS

Claimant raises challenges to several findings in ALJ Francis's decision. First, he alleges ALJ Francis erred in determining that his anxiety and depression were not "severe impairments" under step 2 of the evaluation process. [R. 11, pp. 8–11]. Claimant also claims that ALJ Francis did not properly evaluate his limitations related to cubital tunnel syndrome when fashioning Claimant's RFC. *Id.* at 8. Next, Claimant argues that ALJ Francis failed to properly evaluate the medical evidence offered by his treating physician and consultative examiner. *Id.* at 9–11. Lastly, Claimant suggests that ALJ Francis should have included a question about his use of assistive devices when questioning the Vocational Expert. *Id.* In response, the Commissioner argues that Claimant has not carried his burden to put forward evidence showing that the ALJ erred in her determination and that there is substantial evidence to support the ALJ's findings at each step. [R. 13, 1–14]. Claimant did not file a reply.

### A.    The ALJ's Step 2 Determination

Claimant first argues that the ALJ erred in finding that his symptoms of depression and anxiety were not "severe impairments" under step two of her evaluation. [R. 11, pp. 8–11]. In particular, Claimant alleges that ALJ Francis "has misconstrued the medical evidence regarding the Claimant's depression and anxiety which has been well documented throughout the record and these problems of the Claimant should have been addressed through a psychological consultative exam or at least given some weight to determine if they are severe impairment at a minimum." *Id.*

at 8. In response, the Commissioner responded that "the ALJ engaged in a thorough evaluation of Plaintiff's mental impairments and properly concluded that they were not severe impairments." [R. 13, p. 5].

At step 2, the ALJ considers "whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017). Further, "[a] severe impairment is one that affects an individual's ability to perform basic work-related activities for an adult." *Id.* If the ALJ determines that one or more of a claimant's impairments is severe, then the ALJ moves on to step 3 of the evaluation. SSR 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); *see Floyd v. Comm'r of Soc. Sec.*, No. 23-2036, 2024 WL 3103757, at *2 (6th Cir. 2024). "The Sixth Circuit has found it legally irrelevant that some of a claimant's impairments are found non-severe, when other impairments are found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and the ALJ should consider both the severe and non-severe impairments in the remaining steps." *Lane v. Kijakazi*, No. 6:22-CV-187-KKC, 2024 WL 643134, at *3 (E.D. Ky. Feb. 15, 2024) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)) (internal citations omitted). In other words, "[a court] will not reverse" an ALJ's finding that some of a claimant's impairments were severe and other impairments were not, so long as the ALJ has considered the impairments using the record evidence during her analysis. *Floyd*, 2024 WL 3103757, at *2 ("[A]gency rules require the ALJ to consider even non-severe impairments in the remaining analysis.").

Here, it is clear that ALJ Francis considered Claimant's non-severe impairments in her analysis, and there is substantial evidence to support the ALJ's finding that Claimant's depression

and anxiety were not severe impairments. ALJ Francis exhaustively considered the objective medical evidence. *See* [Tr. 418, 423, 474, 477, 480, 483, 554–616, 650–71, 729, 735, 741, 747, 754, 768, 779–92, 806, 809, 811, 821, 826–27, 835–55, 868–84, 894–902, 932, 939, 947, 963, 972–77, 1023–25, 1031–38, 1046, 1050, 1055, 1069, 1076]. For instance, the ALJ cites to multiple records that show Claimant was "alert" and, at times, "euthymic." *Id.* at 423, 654. Further, ALJ Francis found that

> neither previously alleged depression nor newly reported anxiety can be reasonably characterized as "severe" impairments. Records reveal outpatient counseling and related primary care prescription medication management of common mood-stabilizing drugs like Cymbalta and Trileptal dating to May 2021. However, there is no indication of required hospitalization, emergent care, court-ordered intervention, or decompensation, while routinely negative mental status exams attest to largely effective symptoms control with established conservative care. Consequently, in addition to the spectrum of daily activities and abilities discussed in detail under paragraph B analysis below, the clinical record fails to suggest significant symptoms or related workplace limitations attributable to alleged mental impairments.

*Id.* at 24 (internal citations omitted). When evaluating this medical evidence, ALJ Francis determined that Claimant's mental impairments were not severe because they could be adequately treated with outpatient counseling and medication. *Id.* As the Commissioner recites, "[i]mpairments that are controllable or amenable to treatment cannot support a finding of disability." [R. 13, p. 7]; *Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582, 585 (6th Cir. 2010); *see Mitchell v. Comm'r of Soc. Sec.*, 2013 WL 4042920 (E.D. Ky. Aug. 8, 2013). Further, "the fact [that] Plaintiff is on medication does not alone suggest work-related limitations under the disability evaluation procedure." *Coleman v. Comm'r of Soc. Sec.*, No. 20-11568, 2021 WL 2560242, at *16 (E.D. Mich. June 7, 2021). Additionally, when evaluating Claimant's mental impairments under the Paragraph B criteria, the ALJ considered Claimant's hearing testimony and the function reports submitted by both Claimant and a third party. [Tr. 24–25, 315–22, 323–30, 345–52, 353–64]. ALJ

Francis determined that, based on those reports and testimony, Claimant had no limitations with "understanding, remembering or applying information"; "interacting with others"; and "concentrating, persisting, and maintaining pace," and only a mild limitation with "adapting or managing oneself." *Id.* at 24–25. Specifically, ALJ Francis noted that Claimant is "the father of a toddler" and is able to handle "personal care without prohibitive psychological problems." *Id.* at 25. Moreover, he does not have trouble "engaging the intimate emotional demands of a sustained marriage." *Id.* Overall, ALJ Francis relied on the record as a whole in making the determination that Claimant's mental impairments were not severe, and the Court finds that she did not err.

Lastly, the Court notes that it is within the ALJ's discretion to request supplemental information, such as a medical exam, when evaluating Claimant's application for disability benefits. 20 C.F.R. § 416.919a (explaining that an ALJ may order an exam); *see Fox v. Comm'r of Soc. Sec.*, No. 5:23-CV-580, 2023 WL 7018362, at *9 (N.D. Ohio Oct. 10, 2023). The ALJ is not required to do so, and in this case, given the robust medical record reviewed by the ALJ, the ALJ explained why she did not believe a consultative exam regarding mental impairments was necessary to determine whether Claimant was disabled. The Court finds no error in the ALJ's decision not to request supplemental information in this case.

### B.    Subjective Complaints

Relatedly, Claimant also argues that his testimony provides evidence that his depression and anxiety are severe impairments:

> The Claimant has had these problems for a number of years and is suffering per his testimony. His testimony and the medical records in this case about his depression and anxiety are uncontradicted by anything else in the record other than the ALJ's assertions that these problems were not severe.

[R. 11, p. 8].[3]

While it is unclear if Claimant is challenging the evaluation of his subjective complaints related to only mental impairments or also physical impairments, it is clear that the ALJ properly considered all impairments under the proper standard. In evaluating the claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2)–(3), 416.929(c)(2)–(3).[4] A claimant's statement that he is experiencing pain or

---

[3] Claimant does not clearly state whether he is challenging ALJ Francis's evaluation of his subjective complaints or if he is challenging the severity determination for his mental impairments and pointing to his testimony as evidence. [R. 11, p. 8]. Because Claimant does mention his subjective complaints, the Court will analyze them separately, rather than including them in the subsection concerning step 2. *See* Section III.A.

[4] 20 C.F.R. § 404.1529(c) states:

Evaluating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work. . .

(2) Consideration of objective medical evidence. Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption. Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

(3) Consideration of other evidence. Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms. Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled. We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons. Section 404.1520c explains in detail how we consider medical opinions and prior administrative medical findings about the nature and severity of your impairment(s) and any related symptoms, such as pain. Factors relevant to your symptoms, such as pain, which we will consider include:

(i) Your daily activities;

other symptoms will not, taken alone, establish that he is disabled. *See* 20 C.F.R. § 404.1529(a);

*Walters*, 127 F.3d at 531; *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir.

1986). The Sixth Circuit's guidelines for evaluating a claimant's subjective assertions of disabling

pain are set forth in *Duncan*:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

801 F.2d at 853. Still, "[e]ven when the record contains [medical evidence establishing one of the

guidelines], the ALJ may also consider the credibility of the claimant's subjective complaints."

*Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 381 (6th Cir. 2015). And if the ALJ determines

that the subjective complaints are not consistent with the objective medical evidence, he may

"discount a claimant's credibility." *Id.* Further, "great weight" is afforded to the ALJ's credibility

determination. *Id.* (quoting *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)).

Based on the evaluation, and upon independent review of the record as a whole, the Court

finds that substantial evidence supports ALJ Francis's assessment of the medical evidence and

Claimant's subjective complaints generally. Although, as Claimant notes in his brief, he testified

about his symptoms, his statements concerning pain, taken alone, are not enough to show that he

---

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

is disabled. [R. 11, p. 8–11]; *see* 20 C.F.R. § 404.1529(a); *Walters*, 127 F.3d at 530; *Duncan*, 801 F.2d at 853. Here, ALJ Francis explained, while "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Tr. 30]. The ALJ does not have to discuss each individual factor from 20 C.F.R. § 404.1529(c) and how it comports with the record evidence. *Karen F. v. Comm'r of Social Sec.*, No. 2:22-cv-2951, 2023 WL 3740784, at *4 (S.D. Ohio May 31, 2023). ALJ Francis complied with the regulations by considering the record, and not just Claimant's subjective complaints or cherry-picked medical findings, in fashioning Claimant's RFC. ALJ Francis considered the objective medical evidence, Claimant's treatment history, and Claimant's own hearing testimony and cited to the corresponding evidence. [Tr. 45–74, 423, 553–68, 596–616, 639, 648–65, 735–54, 768, 785, 792, 806–11, 821, 826–27, 895, 902, 932, 939, 962, 988, 1024, 1046, 1050, 1055, 1069]. Specifically, ALJ Francis found that

> neither previously alleged depression nor newly reported anxiety can be reasonably characterized as "severe" impairments. Records reveal outpatient counseling and related primary care prescription medication management of common mood-stabilizing drugs like Cymbalta and Trileptal dating to May 2021. However, there is no indication of required hospitalization, emergent care, court-ordered intervention, or decompensation, while routinely negative mental status exams attest to largely effective symptoms control with established conservative care. Consequently, in addition to the spectrum of daily activities and abilities discussed in detail under paragraph B analysis below, the clinical record fails to suggest significant symptoms or related workplace limitations attributable to alleged mental impairments.

*Id.* at 24 (internal citations omitted). In addition, ALJ Francis considered the claimant's daily activities. ALJ Francis noted the "State agency's finding" that Claimant's mental impairments were not severe was "determinately persuasive because it is substantially consistent with and

supported by the subordinate record of reporting, routinely negative mental status exams, and established conservative treatment, as well as documented daily activities and abilities incident to the claimant's fairly independent lifestyle as a husband and father of a young child." *Id.* at 35. ALJ Francis further acknowledged Claimant's alleged mental impairments and found that Claimant was

> completing most personal care without interference from emotional instability or cognitive compromise; completing preparation of light foods and meals; maintaining sufficient attentiveness to drive; completing personal and family shopping (i.e., per his daughter, "any item he or my mom may need for meals or household"); watching television and movies, reading a newspaper, and attending church services without preclusive difficulty sustaining adequate focus; doing an "OK" job following simple instructions; using a home computer and smartphone; and helping with common household chores like laundry, dishes, and taking out the trash.

*Id.* at 25. In considering the medical evidence and Claimant's daily abilities, the ALJ found that Claimant was not restricted to the level Dr. Klickovich advocated for in his report on Claimant's abilities. *Id.* at 34. After carefully considering the entire record in this case, ALJ Francis reasonably concluded that the objective medical evidence, treatment history, and Claimant's testimony, failed to corroborate Claimant's allegations of disabling impairments, whether mental or physical.

**C.    RFC**

Claimant briefly challenges the ALJ's RFC determination with regard to his "cubital tunnel syndrome[,]" arguing that the ALJ erred by "only restrict[ing] his ability to handle, finger[,] and feel bilaterally and to frequently reach overhead bilaterally." [R. 11, pp. 7–8]. The Commissioner responds by claiming that Claimant has not shown evidence "that greater manipulative restrictions were warranted." [R. 13, p. 4].

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c),

416.945(a)(1), 416.946(c). The ALJ bases his or her determination on all relevant evidence in the case record, including statements from medical sources. 20 C.F.R. §§ 404.1529, 416.929, 404.1545(a)(1)–(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527, 416.927, 404.1529(a), 416.929(a).

The claimant bears the burden of proof with respect this step. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan*, 548 F.3d at 423. The claimant always retains the burden of proving lack of RFC. *Jordan*, 548 F.3d at 423; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

The Court finds that the ALJ properly evaluated all the evidence in the record in determining Claimant's limitations related to cubital tunnel syndrome.[5] ALJ Francis considered evidence from Dr. Deidre Parsley, who "documented full 5/5 grip strength bilaterally and the claimant's ability to write and pickup coins with either hand without difficulty back in August 2021." [Tr. 31 (internal quotation marks omitted)]; [Tr. 636–43]. Notably, Dr. Parsley did not mention any greater manipulative restrictions, opining only that "[t]he claimant's ability to

---

[5] The ALJ did not consider the Bluegrass Orthopaedics records from December 7, 2022 included in the Administrative Record at pages 75–78 because they were not timely submitted for review. The ALJ summarized the reason for not considering this evidence: "The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. The undersigned Administrative Law Judge declines to admit this evidence because the requirements of 20 CFR 404.935(b) are not met. Specifically, and in the absence of notification by [']5-day letter', [the] 4 pages comprising a December 2022 orthopaedic appointment have been excluded." [Tr. 20]. As the Commissioner notes, Claimant has not asked the Court for a sentence six remand to consider this evidence. [R. 13, p. 4]. "[T]he only method to have new evidence considered is to ask for a sentence six remand under 42 U.S.C. § 405(g). Such a remand is allowed 'only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Dunn v. Astrue*, No. 5:10–312–DCR, 2011 WL 1630287, at *3 (E.D. Ky. Apr. 29, 2011) (internal citations omitted) (citing 42 U.S.C. § 405(g)). "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). Even if Claimant had requested this remand, and the Court were allowed to consider this new evidence, it would not change the Court's conclusion that there is substantial evidence to support the ALJ's finding concerning Claimant's cubital tunnel syndrome.

perform work-related activities . . . may be impaired due to the objective findings [in Dr. Parsley's report]." [Tr. 639]. This statement does not show that Dr. Parsley advocated for any greater restrictions than ALJ Francis determined for Claimant's RFC. ALJ Francis also considered records from Dr. James Horsley: "[r]egarding neuropathy and both carpal and cubital tunnel syndromes, nerve conduction testing performed May 2022 yielded electrodiagnostic evidence of moderate to severe right and moderate left median neuropathy consistent with bilateral CTS." [Tr. 30–31 (internal quotation marks omitted)]; [Tr. 885–87]. Even with this evidence of nerve conduction testing, ALJ Francis noted that "treatment has remained proportionately conservative utilizing analgesia and injections without referred release surgery." [Tr. 31]; [Tr. 888–92]. While Claimant reported to Dr. William O'Neill that he would like to have release surgery in July 2022, there is no evidence to show that he ever took additional steps to do so. [Tr. 888–92]. ALJ Francis also considered Claimant's complaints regarding loss of sensation in his hands using records from Dr. Klickovich: "While older exams reflect occasionally reduced sensation in the hands (e.g., decreased pinprick in the left 5th digit, more recent exams from late 2022 reflect no deficits (e.g., sensory intact to pinprick and light touch . . . with no significant asymmetry or distal decrement noted[.]" [Tr. 31 (internal quotation marks omitted)]; [Tr. 1023–25]. Finally, taking into account all of the medical evidence, "[c]onsidered in conjunction with the physical components of related daily activities discussed in detail under paragraph B analysis above," ALJ Francis determined that "this mixed, but more recently non-contributory, clinical evidence does not support more than mild restriction to frequent handling, fingering, or feeling." [Tr. 31 (internal quotation marks omitted)]. Ultimately, ALJ Francis evaluated the medical evidence and determined that, while there was evidence of Claimant's neuropathy, the medical evidence and Claimant's daily activities supported no greater than a "mild restriction," as she found in her RFC determination. *Id.* at 30–31. The

Claimant has not put forward evidence in his brief to show how ALJ Francis's determination was not supported by substantial evidence in the record. The Court finds that there is substantial evidence to support ALJ Francis's RFC determination.

### D.    Medical Evidence

The Court turns to Claimant's challenges concerning ALJ Francis's consideration of the relevant medical evidence. ALJ Francis found that "[t]he contemporary record remains decidedly unpersuasive for disabling symptoms and limitations." *Id.* Claimant challenges how the ALJ evaluated the medical opinion evidence, specifically the opinions of Dr. Klickovich and the consultative examiner. [R. 11, pp. 8–11].

#### i.    Dr. Klickovich

Claimant claims that "Dr. Klickovich's opinion in regard to his ability to do work related activities should have been given much more credibility by the ALJ." *Id.* The Commissioner responds that "Plaintiff fails to show any error in the ALJ's finding that the opinion [of Dr. Klickovich] was not persuasive" and that Claimant may be attempting to invoke the treating physician rule that was used prior to 2017. [R. 13, p. 11].

In Dr. Klickovich's "Medical Assessment of Ability to Do Work-Related Activities (Physical)," he found that: "[t]he patient exhibits symptoms, signs, examination[,] and imaging findings consistent with lumbar annular tear as well as radiculopathy." [Tr. 408]. Dr. Klickovich's assessment included that Claimant "walks with a cane" and stated that Claimant "requires multiple position changes" during the day. *Id.* at 407. Further, Dr. Klickovich found, in the form of a checklist, that Claimant could never climb, balance, stoop, crouch, kneel, and crawl, and that Claimant's ability to reach and push/pull were impacted by Claimant's impairment. *Id.*

The new regulations for evaluating medical opinions are applicable here since Claimant's

claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The previous regulations required a treating physician's opinion be given controlling weight if it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404. 1527(c)(2). Under the new regulations, however, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). An administrative law judge must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors" when determining the persuasiveness of an opinion. 20 C.F.R. 404.1520c(c)(1)–(5). But the administrative law judge need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2).

In considering Dr. Klickovich's opinion, ALJ Francis provided the following:

Thus, the treating source statements of Drs. Klickovich and Harlan, which variously endorse the claimant's inability to perform even dramatically reduced ranges of sedentary work for more than 2 or 4 hours daily, are not persuasive because they are patently inconsistent with and unsupported by the record of stabilized back pain following effective adjustment of permanent spinal cord stimulator; conservatively managed neuropathy and carpal and cubital tunnel syndromes without recent or acute symptomatic manifestation; mild-to-moderate hearing loss without mechanical aide or demonstrated communication difficulties in typical settings, like medical offices or hearing proceedings; similarly mild-to-moderate breathing issues that are conservatively treated and without negative related findings during

16

typical exams; and isolated left shoulder changes that also suffer from a dearth of contributory clinical findings, all considered in context of the inhibiting or exacerbatory effect of obesity.

[Tr. 34 (internal citations omitted)]. ALJ Francis stated that she did not find Dr. Klickovich's opinion persuasive because it was not consistent with, or supported by, the overall record. Indeed, the records ALJ Francis cites show "stabilized back pain following effective adjustment of permanent spinal cord stimulator," among other improvements in symptom management. *Id.* And though the records from Dr. Klickovich document Claimant's complaints of serious lumbar back pain, *see id.* at 562, they also document times where Claimant's symptoms were signifincantly improving with the use of a permanent stimulator and injections. *Id.* at 79, 615; *Roland v. Kijazaki*, No. 5:20-CV-113-JMH, 2021 WL 3713558, at *5 (E.D. Ky. Aug. 20, 2021) (stating that an ALJ can consider the effectiveness of a spinal cord stimulator and other treatments, such as medication, physical therapy, and injections, when evaluating Claimant's symptoms for RFC); *Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-00746, 2019 WL 1903583, at *18 (N.D. Ohio Apr. 29, 2019) (finding that an "ALJ did not gloss over [Claimant's surgeries]" when "concluding that [Claimant] generally required conservative treatment" because ALJ acknowledged the surgeries and how, after surgery, conservative treatment managed symptoms); *Tomlin v. Comm'r of Soc. Sec.*, No. 1:12–cv–957, 2013 WL 6493536, at *10 (S.D. Ohio Dec. 10, 2013) (determining that, whether or not an ALJ describes treatment of symptoms as "conservative," the important inquiry for courts is whether "the ALJ thoroughly considered plaintiff's treatment history"). ALJ Francis thoroughly explained the medical evidence surrounding Claimant's allegations of low back pain:

> The contemporary record remains decidedly unpersuasive for disabling symptoms and limitations. Regarding low back pain, the claimant's professed worst problem (i.e., "severe" lumbar degenerative disc disease, spondylosis, and sacroiliitis), he underwent successful implantation of a permanent spinal cord stimulator (SCS) in July 2020. Following electrotherapeutic adjustments in August ("reprogramming") the claimant began reporting only mild lumbar pain (i.e., 2-3/10). Subsequently,

low back pain is portrayed as largely "stable" with established medication management and periodic sacroiliac joint injections. In fact, in August 2021, over a month after previous injection, the claimant reported "complete relief during the anesthetic stage with 80% ongoing relief [of low back pain.]" Further, providers appear to have achieved optimal device performance as the most recent pain management records indicate, "SCS is effective, no need for reprogramming at this time[.]" Pursuant to the addition of radiofrequency ablation, recent appointment notes from September 2022, reflect the claimant's reporting of "90% relief for the duration of the anesthetic phase and 70% ongoing relief"[.]" Consistent with the collective evidence of progress with low back pain, recent treatment notes reflect diagnosis of lumbar spondylosis "without myelopathy or radiculopathy[.]" Consequently, the record of improved low back pain with the adjusted and diverse modalities discussed, underscored by the body of typically negative or modestly positive exams summarized below, as well as the physical aspects of documented daily activities cited during paragraph B analysis above, is consistent with the claimant's ability to perform within a light exertional framework with a half-hour sit/stand-walk option. Moreover, this evidence also supports prudent prohibition of extreme climbing, but does no preclude all stooping, kneeling, crouching, and crawling or more than mildly restricted ("frequent") exposure to vibration.

[Tr. 30]. Because of the discrepancies between the overall record and Dr. Klickovich's reports, ALJ Francis did not find his medical opinion persuasive. Overall, ALJ Francis considered both the supportability and consistency factors and presented her findings when discussing Dr. Klickovich's medical opinion evidence. As noted above, an ALJ need not explain how he or she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

Having considered her thorough analysis, the Court finds that substantial evidence supports ALJ Francis's finding that Dr. Klichovich's assessment is unpersuasive. ALJ Francis complied with the regulations by discussing both the supportability and consistency of the assessment, and she thoroughly considered the objective medical evidence that contradicts Dr. Klickovich's assessment of Claimant's RFC. [Tr. 30]; [Tr. 553–617]; [Tr. 673–701]; [Tr. 993–96]; [Tr. 1023–25; [Tr. 1119–20]. Moreover, it is worth noting that some of Dr. Klickovich's proposed limitations come in the form of a "check-box analysis" with a few fill-in-the-blank questions, *see* [Tr. 406–08], which administrative law judges may appropriately afford little weight. *See Hernandez v.*

*Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (noting that reports, where the physician's only obligation is to check a box or fill in a blank, are generally weak evidence at best); *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (recognizing that an ALJ can properly give check-box forms "little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence"). ALJ Francis did not err in finding this assessment unpersuasive since she found it was inconsistent with the medical evidence as a whole.

### ii. Consultative Examiner

Claimant makes a similar argument regarding the consultative examiner's RFC findings. [R. 11, p. 5, 11]. In particular, Claimant argues that the "[c]onsultative exam was an in person examination" and that "[t]he ALJ disregarded all of these opinions . . . without laying a proper foundation to explain her reasoning other than to just say each was nonpersuasive." *Id.* at 11. In response, the Commissioner argues that because Claimant has not identified the examiner for which the medical opinion evidence is being challenged or identified how his or her opinion was not examined by ALJ Francis, this "argument should be deemed waived." [R. 13, p. 13–14]. The Court agrees with the Commissioner that the claimant does not point to which examiner's findings he is relying on in making this argument or what opinion evidence the ALJ ignored; the Court will assume that, because Claimant identifies the exam as taking place on August 30, 2021, the examiner he is pointing to is Dr. Parsley. [R. 11, p. 5]; [Tr. 637–41].

The Court finds that substantial evidence supports ALJ Francis's determination that no additional restrictions on Claimant's RFC were warranted because of Dr. Parsley's findings and opinions. Claimant again seems to rely on the "treating physician rule" by claiming that he was seen "in person" for his "examination" and that this "examination revealed problems consistent

with the medical history," so ALJ Francis should have imposed a more restrictive RFC. [R. 11, p. 5, 11]. But this argument does nothing to point out shortcomings in ALJ Francis's analysis of this exam. In discussing the consultative examiner's exam, the ALJ noted that the findings were consistent with the record:

> observations [from the] consultative physical therapy examination regarding the claimant's ability to "write and pick up coins with either hand without difficulty" and ambulate with only a "mildly antalgic gait" while "not requiring a handheld assistive device" can arguably be construed as at least implied functional conclusions and, to that extent, are persuasive because they are consistent with and supported by not only the examiner's clinical observations, but the overwhelming balance of similar medical findings.

[Tr. 35 (internal citations omitted)]. In making this finding, ALJ Francis considered both the supportability and consistency of Dr. Parsley's medical opinion evidence. *Id.* She considered how "[e]ven the consultative examiner documented full 5/5 grip strength bilaterally and the claimant's ability to write and pickup coins with either hand without difficulty back in August 2021." *Id.* at 31, 636–43 (internal quotation marks omitted). Further, Dr. Parsley did not advocate for greater restrictions, finding only that "[t]he claimant's ability to perform work-related activities . . . may be impaired due to the objective findings [in Dr. Parsley's report]." *Id.* at 639. While the ALJ did find Dr. Parsley's "conclusions . . . persuasive" to a certain extent because of their consistency with the record, ALJ Francis did not find that this evidence supported a more restrictive RFC. *Id.* at 35. Overall, ALJ Francis considered both the supportability and consistency factors and presented her findings when discussing Dr. Parsley's medical opinion evidence. As was the case with Dr. Klickovich's assessment, an ALJ need not explain how he or she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

### E.    Vocational Expert

Claimant's final argument concerns the hypothetical questions presented to the Vocational

Expert at step 5 of the evaluation process. Specifically, Claimant argues that his use of a rollator and cane "should have been made a part of hypothetical to the vocational expert in making a determination as to whether or not the Claimant could work." [R. 11, p. 9]. The Commissioner responds that ALJ Francis "fully explained why she was not including such a limitation in the RFC finding (and thus the hypothetical question)" to the Vocational Expert. [R. 13, p. 12].

The Court notes that this issue was raised in two sentences and cites to no applicable caselaw to support his assertion. It is well settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived"). Nevertheless, the Court finds that, on the merits, the ALJ did not err in not asking the Vocational Expert about Claimant's use of assistive devices.

Step 5 requires that an ALJ, considering Claimant's age, education, work experience, and RFC, determine whether there are jobs that exist in significant numbers in the national economy that Claimant can perform. 20 C.F.R. § 404.1520(a)(4); *Katrina E. v. Comm'r of Soc. Sec.*, No. 3:21-CV-565-CHL, 2023 WL 2653389, at *14 (W.D. Ky. Mar. 27, 2023). At this stage, the burden shifts to the Commissioner. *Katrina E.*, 2023 WL 2653389, at *14; *Jordan*, 548 F.3d at 423. "The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations." *Katrina E.*, 2023 WL 2653389, at *14. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the

question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible." *Parks v. Social Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993)). Further, "the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations. That does not mean that the vocational expert's answer about the hypothetical individual binds the ALJ." *Kessans v. Comm'r of Soc. Sec.*, 768 Fed. App'x 531, 536 (6th Cir. 2019) (internal citations omitted). "[T]o hold otherwise would effectively eliminate the ALJ's ability to ask any questions about a hypothetical individual unless he had identified the exact contours of the claimant's disability by the time of the hearing." *Id.*

Here, Claimant asserts that the ALJ should have asked the Vocational Expert about his use of assistive devices [R. 11, pp. 9–11]. The use of assistive devices is governed by SSR 96-9p, a guidance document that includes information that an ALJ uses to evaluate the need for a hand-held assistive device. SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

*Id.* Plaintiff has presented a prescription for a "rollator walker" prescribed by Dr. April Hall-Slone on July 8, 2022. [Tr. 970].[6] However, as the Commissioner points out, the prescription does not "describ[e] the circumstances for which it is needed"; it merely denotes that Plaintiff has an

---

[6] The claimant also argues that his use of a cane is medically necessary but has put forward no evidence of a prescription for a cane.

"unsteady gait" but does not explain relevant details, such as "whether [a rollator walker is needed] all the time, periodically, or only in certain situations; [the] distance and terrain [requiring its use]; and any other relevant information." [Tr. 970]; *Jones v. Comm'r of Soc. Sec.*, 815 Fed. App'x 926, 931 (6th Cir. 2020) ("Even if the single mention of the cane was medical documentation establishing the need for a hand-held assistive device, a single notation of cane cannot possibly provide the circumstances for which [the assistive device] is needed." (internal quotation marks omitted)); *Sebastian v. Astrue*, No. 2:11-CV-387-DCR, 2012 WL 4106046, at *3 (E.D. Ky. Sept. 17, 2012) (finding that ALJ's decision was supported by substantial evidence when "[t]he sole piece of medical evidence regarding a cane was a prescription, with no treatment notes or objective basis, provided after the hearing").

Further, the Court finds that the ALJ's decision that a rollator walker is not medically necessary is supported by substantial evidence. ALJ Francis determined that the claimant's use of assistive devices was not consistent with the objective medical evidence. [Tr. 32–33]. ALJ Francis cited to the prescription in her discussion[7] and thoroughly explained why she did not find the use of a walker consistent with the entire record:

> The claimant testified to compulsory use of a prescribed cane or rolling walker. (*see* B24F, p.5 and B29F). However, records reflect only a few instances of observed use of the cane, almost exclusively in August and October 2022 (B3F, p.16; B24F, p.4; B32F, p.6; B35F, p.1) and no use of the walker. Moreover, exams– including those incident to infrequently documented cane usage–are routinely negative for any acute neuromusculoskeletal deficits commensurate with need for an assistive device (*see* comprehensive cite of record exams above). And, contrary to gross instability on his feet, the pain management appointment record dated September 2020, about a year after the prior ALJ decision, documents reporting of "no falls in the past year" (B4F, p.113), an assertion re-affirmed during more recent pain management appointment in October 2022 (B35F, p.2). At a counseling session in December 2020, providers observed that "gait is stable" with no mention of an assistive device (B8F, p.28). Further, at consultative examination in August 2021, the claimant exhibited only a "mildly antalgic gait", for which he "did not require a handheld assistive device" (B7F, p.3). Consequently, the undersigned

---

[7] The prescription is contained in Exhibit B29F in the Administrative Record. [Tr. 970].

concludes that use of an assistive device for ambulation or stability at station constitutes a personal preference and not medical necessity.

[Tr. 32–33]; *Watkins v. Comm'r of Soc. Sec.*, No. 1:16-CV-2643, 2017 WL 6419350, at *11 (N.D. Ohio Nov. 22, 2017), *report and recommendation adopted*, No. 1:16-CV-2643, 2017 WL 6389607 (N.D. Ohio Dec. 14, 2017) ("When the record contains prescriptions for walking assist devices, district courts in the Sixth Circuit have found that RFC determinations are not supported by substantial evidence when the ALJ, (i) acknowledged that a cane had been prescribed, (ii) did not include the use of the cane in the RFC, and (iii) provided no explanation for this omission."); *see Hodson v. Comm'r of Soc. Sec.*, No. 3:17-cv-00096-GNS-CHL, 2018 WL 3326842, at *8 (W.D. Ky. Mar. 1, 2018), *report and recommendation adopted by*, *Hodson v. Berryhill*, No. 3:17-CV-00096-GNS-CHL, 2018 WL 1558106 (W.D. Ky. Mar. 20, 2018) ("[T]he ALJ did, in fact, explain that, while the record indicated some use of a cane, the medical evidence was vague with respect to any precise physical limitations . . . Notably, plaintiff does not point to any medical records that contradict the ALJ's conclusion on this point."). Here, ALJ Francis clearly explained why she did not find that the use of a walker was medically necessary, and, as a result, did not include it in her RFC determination. *See Vernatter v. Saul*, 2021 WL 2042093, at *5 (E.D. Ky. May 21, 2021) ("While there is medical documentation of Plaintiff's need for a cane, there is similarly documentation that Plaintiff failed to use the cane. Further, the record is missing any evidence of the circumstances in which Plaintiff needed to use the cane. Although the Court finds that a different conclusion may have also been appropriate, there is substantial evidence in the record supporting the ALJ's omission of the assistive device."); *Cruz-Ridolfi v. Comm'r of Soc. Sec.*, No. 1:17-CV-1075, 2018 WL 1136119, at *16 (N.D. Ohio Feb. 12, 2018) ("Thus, the ALJ's decision reflects that she considered the evidence of Plaintiff's cane usage, and ultimately found it not fully credible due to inconsistencies in the record. It is an ALJ's duty, not this Court's[,] to

resolve such inconsistencies in the record."). Upon finding that the walker was not medically

necessary, ALJ Francis did not need to incorporate these complaints into her step 5 determination.

It is clear that the ALJ considered the Vocational Expert's testimony, as the ALJ's decision noted,

> [t]o determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative light unskilled occupations such as cashier (DOT 211.462-010), for which there are 46,597 jobs in the national economy; delivery merchandiser (DOT 230.663-010), for which there are 22,139 jobs in the national economy; and school bus monitor (DOT 372.667-042), for which there are 6,823 jobs in the national economy. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

[Tr. 36]. ALJ Francis was not required to incorporate limitations that she determined were not

credible, such as the need for Claimant to use a rollator and cane. The Court finds substantial

evidence to support the ALJ's questions presented to the Vocational Expert and that she fully

considered those answers when making his decision on Claimant's claim.

As a closing note, an ALJ's decision may be supported by substantial evidence "even if

that evidence could support a decision the other way." *Casey*, 987 F.2d at 1233. While there might

be evidence in the record that could support a contrary conclusion, it is clear ALJ Francis

thoroughly considered all evidence of record, and the Court finds no error in her decision.

## IV.    CONCLUSION

For all these reasons, the Court will affirm the Commissioner's decision.

**IT IS THEREFORE ORDERED** as follows:

1.  The final decision of the Commissioner is **AFFIRMED**.

2.  A separate Judgment will be entered consistent with this Order.

This the 20th day of November, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Copies:        Counsel of Record